_____ FILED _____ ENTERED
_____ LOGGED _____ RECEIVED

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

MAR 17 2020

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

| | |
|---|---|
| IN THE MATTER OF A SEARCH WARRANT AUTHORIZING THE SEARCH OF THE SUBJECT ELECTRONIC DEVICE | CASE NO. 2 0 - 0 6 7 1  ADC |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT AUTHORIZING
## THE SEARCH OF THE SUBJECT ELECTRONIC DEVICE

I, Peter Hanlon, a Detective with the Baltimore County Police Department and a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI) being duly sworn, states:

1.      This affidavit is being submitted in support of an application authorizing the search and seizure of information associated with the following cellular phone (the "**Subject Electronic Device**"): a Black and Gold LG model SP200 phone, associated with Baltimore County Property Number 5390-011, taken during a search of Donte DINGLE's apartment located at 5229 St. Charles Ave, with Serial Number 712CYNL0024519. *See* Attachment A. The **Subject Electronic Device** is currently in the custody of the Federal Bureau of Investigation. The **Subject Electronic Device** remains in the same or substantially same condition as when it was first seized by law enforcement officers.  The **Subject Electronic Device** is believed to contain and conceal items that constitute evidence of violations of 18 U.S.C. § 1951, Hobbs Act Robbery.

2.      The applied for warrant would authorize the forensic examination of the **Subject Electronic Device** for the purpose of identifying electronically stored data particularly described in Attachment B and using the protocols described in Attachment B by members of the FBI, or their authorized representatives, including but not limited to other law enforcement agents assisting in the above described investigation.

1

## AFFIANT BACKGROUND

3.    I am a sworn Task Force Officer (TFO) currently assigned to the Federal Bureau of Investigation (FBI) Violent Crime Task Force. I have been assigned FBI Violent Crime Task Force since October 2011. I have been a member of the Baltimore County Police Department since April, 1988. Upon graduating from the Police Academy, I was assigned to the uniformed patrol. In October 1994, I was assigned to the Towson Precinct's Investigative Services Unit and in June 1995 transferred to the Precinct's Community Drug and Violence Interdiction Team. Since July 1996, I have been assigned to the Criminal Investigation Bureau, Crimes Against Person Section, Robbery Unit. As an FBI Task Force Officer, I am currently responsible for investigating violent crimes, to include robberies of financial institutions, Hobbs Act robberies, kidnappings and other violent crimes. I have been assigned to the FBI Violent Crime Task Force since October 2011.

4.    As a Task Force Officer of the FBI, I am authorized to investigate violations of laws of the United States and as a law enforcement officer with the authority to affect arrests and execute warrants issued under the authority of the United States.

5.    Through training as well as interviews and interrogations of hundreds of persons arrested for the above offenses, I am familiar with the actions, traits, and habits of persons who have committed these offenses specifically in the area of robbery. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and police officers, witnesses, police records, and reports.

6.    Based on my knowledge, training, and experience, I know that individuals involved with Hobbs Act robbery frequently use cellular telephones, communication devices, and other electronic media storage to further their illegal activities. More specifically, based upon my knowledge, training, and experience, and participation in this and other Hobbs Act robbery

2

investigations, I know the following:

      a.      The fruits and instrumentalities of criminal activity are often concealed in digital form. Furthermore, digital camera technology is often used to capture images of tools and instrumentalities of pending criminal activity. Cell phones have both digital storage capacity and digital camera capabilities.

      b.      Individuals involved in Hobbs Act robbery often use digital storage devices to maintain telephone number "contact lists" of individuals who may have assisted in the planning of this and other criminal activity and sometimes take photographs of themselves and/or co-conspirators.

      c.      Individuals who possess or own handguns or other weapons frequently photograph themselves holding the handguns or other weapons.

      d.      Photographs on a suspect's digital device sometimes show the suspects handling proceeds or other property taken during robberies.

      e.      Individuals who engage in Hobbs Act robbery often use cellular telephones to communicate with co-conspirators via phone calls and text messages.

      f.      Cell phones often record the phone's historical location data.

      7.      Because this affidavit is being submitted for the limited purpose of establishing probable cause for a search and seizure warrant, I have not included every detail of every aspect of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, police officers, witnesses,

cooperating sources, telephone records, and reports. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

8.     With the assistance of the Baltimore Police Department, the Baltimore County Police Department, and the Anne Arundel County Police Department, the FBI is currently investigating a trend of armed Hobbs Act robberies that have occurred throughout Baltimore City, Baltimore County, and Anne Arundel County. The investigation encompasses robberies of the following stores, among others:

- 6/06/2018   Ridgeway Liquors          608 Edmondson Avenue
- 6/21/2018   Euro Liquors              10512 Reisterstown Road
- 7/05/2018   5th Avenue Liquors        508 Crain Highway
- 7/12/2018   One-Stop Liquors          11700 Reisterstown Road

9.     Although some of the robberies involved multiple armed suspects, the primary suspect was as a black male, approximately 6'00", 200 pounds. During the robberies, he was armed with a silver handgun and typically forced the employees to the rear of the store at the conclusion of the robberies.

10.    The suspect typically wore a disguise consisting of a costume, wigs, and glasses, as shown in the images below. For example, on June 21, 2018, during the robbery of Euro Liquors, the suspect was wearing a brown wig, wire framed glasses, a police costume shirt with the word "COP" written in white lettering on the front upper left portion of the shirt, a fake mustache, a white bandage on his right forearm (believed to hide a tattoo(s)), black pants, and black shoes. On July 5, 2018, during the robbery of 5th Avenue Liquors, the suspect was wearing a wig, beard, red baseball hat, sunglasses, and a blue work shirt with stripes displaying the name "Michael" across

4

the chest. On July 12, 2018, during the robbery of One-Stop Liquor Store, the suspect was wearing a dark colored fishing style hat, a green reflective construction jacket, an eye patch, a fake mustache, black pants, and black shoes.

11.     While investigating the armed robbery of the One-Stop Liquor Store, investigators learned the suspect brought a bag of Dorito chips to the counter prior to the robbery, and then left the bag on the counter. The bag was processed for latent fingerprints. A latent fingerprint was recovered and submitted to the Baltimore County Police Department's Forensic Services Division-Latent Fingerprint Unit for analysis. The latent fingerprint was positively identified to be the left thumb of Donte Lamont DINGLE.

12.     After the recovery of the latent fingerprint from the Doritos bag, investigators conducted surveillance on DINGLE. During the surveillance detail, investigators observed DINGLE entering and exiting 5229 Saint Charles Avenue, Baltimore, Maryland 21215. Police then obtained a warrant to search 5229 Saint Charles Avenue, which was executed during the morning of July 20, 2018.

13.     After entering the location at 5229 Saint Charles Avenue, DINGLE's residence, law enforcement spoke with Donna Michelle Roundtree, who confirmed that "Donte" lived at 5229 Saint Charles Avenue in the upstairs middle bedroom.

14.     A search of DINGLE's bedroom revealed numerous articles of clothing, wigs, glasses, and other disguises, several of which matched items worn by the suspect during the robberies. For example, the following images display the items worn by the suspect during the Euro Liquors and 5th Avenue Liquors, respectively, next to the items seized from DINGLE's bedroom:

Euro Liquors

 

5th Avenue Liquors

  

15.     In addition, law enforcement recovered from DINGLE's bedroom ammunition and a silver Bryco Arms Model T380 .380 caliber pistol, which appears to match the pistol brandished by the suspect during the robberies.  Law enforcement also recovered $2,159.54 in U.S. currency.

16.     Besides the firearm and the clothing, law enforcement recovered the **Subject Electronic Device** from DINGLE's bedroom.

17.     Dingle was eventually indicted federally for committing the four robberies listed above in pargraph 8.  *See United States v. Dingle*, Criminal No. DKC-19-0204.

18.     Given the facts set forth above, I have probable cause to believe that DINGLE has committed violations of 18 U.S.C. § 1951, Hobbs Act Robbery.  As such, I respectfully request

that this Court find probable cause that evidence of the aforementioned criminal violations is contained in the **Subject Electronic Device**.

## THE SUBJECT ELECTRONIC DEVICE

19.     As mentioned above, the **Subject Electronic Device** came into law enforcement's possession as a result of the execution of search warrant on July 20, 2018, and is currently in the lawful possession of the FBI.

20.     On January 15, 2019, the Hon. Stephanie A. Gallagher authorized a search and seizure warrant for the **Subject Electronic Device**. *See* Case No. SAG-19-0157. The FBI attempted to execute that warrant within 14 days using a specific forensic extraction device. Due to the security protection on the **Subject Electronic Device**, however, the search was unsuccessful. Law enforcement now believes that due to the advancements in technology, and through the use of more sophisticated extraction devices, it will be able to conduct a successful search of the **Subject Electronic Device**.

21.     The **Subject Electronic Device** has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the **Subject Electronic Device** first came into the possession of law enforcement.

22.     I submit there is probable cause that DINGLE participated in a string of Hobbs Act Robberies, in violation of Title 18 U.S.C. § 1951, and that, based on my training, knowledge and experience, evidence of this crime is contained within the **Subject Electronic Device**.

23.     Known specifics of the **Subject Electronic Device** requested for authorization to search are described in Attachment A, and the types of information expected to be recovered from the device are described in Attachment B.

7

20 - 0 6 7 1  ADC

24.     To the extent that the warrant authorizes the seizure of any tangible property, any wire or electronic communication (as defined in 18 U.S.C. § 2510), or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.

25.     Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

### CONCLUSION

WHEREFORE, I respectfully request that the Court issue a warrant authorizing members of the FBI, or their authorized representatives, including but not limited to other law enforcement agents assisting in the above described investigation, to seize and search the **Subject Electronic Device**, as described in Attachment A, for the purpose of identifying electronically stored data particularly described in Attachment B and using the protocols described in Attachment B.

Det. _____ #3354

Peter Hanlon
Task Force Officer, FBI

Sworn to before me this _2nd_ day of March 2020

The Honorable A. David Copperthite
United States Magistrate Judge

8

20 - 0 6 7 1 ADC

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The property to be searched, currently in the custody of the Baltimore County Police Department, is the following **Subject Electronic Device** seized on July 20, 2018: a Black and Gold LG model SP200 phone, associated with Baltimore County Property Number 5390-011, taken during a search of Donte DINGLE's apartment located at 5229 St. Charles Ave, with Serial Number 712CYNL0024519

## ATTACHMENT B

### ITEMS TO BE SEIZED

All records contained in the items described in Attachment A which constitute evidence of violations of 18 U.S.C. § 1951, as outlined below:

1. Any and all records related to the location of the user(s) of the device.

2. All of the following:

   a.  digital images;

   b.  digital videos;

   c.  records of incoming and outgoing voice communications;

   d.  records of incoming and outgoing text messages;

   e.  the content of incoming and outgoing text messages;

   f.  voicemails;

   g.  voice recordings;

   h.  contact lists;

   i.  location data;

   j.  evidence of who used, owned, or controlled the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

   k.  evidence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

   l.  evidence of the lack of such malicious software;

   m.  evidence of the attachment to the device of other storage devices or similar containers for electronic evidence;

20 - 06 7 1  ADC

    n.  evidence of counter forensic programs (and associated data) that are designed to eliminate data from the devices;

    o.  evidence of the times the devices were used;

    p.  passwords, encryption keys, and other access devices that may be necessary to access the devices;

    q.  documentation and manuals that may be necessary to access the Device or to conduct a forensic examination of the Device; and

    r.  contextual information necessary to understand the evidence described in this attachment.

3. With respect to the search of any of the items described above which are stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer with the aid of computer-related equipment (including CDs, DVDs, thumb drives, flash drives, hard disk drives, or removable digital storage media, software or memory in any form), the search procedure may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein, while permitting government examination of all the data necessary to determine whether that data falls within the items to be seized):

    a.    surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for markings it contains and opening a drawer believed to contain pertinent files);

    b.    "opening" or cursorily reading the first few "pages" of such files in order to determine their precise contents;

    c.    "scanning" storage areas to discover and possible recover recently deleted files;

    d.    "scanning" storage areas for deliberately hidden files; or

11

e.  performing key word searches or other search and retrieval searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.

4. If after performing these procedures, the directories, files or storage areas do not reveal evidence of the specified criminal activity, the further search of that particular directory, file or storage area, shall cease.